WOLFSBURGER TRANSPORT–GE-SELLSCHAFT m. b. h., Petitioner,

v.

FEDERAL MARITIME COMMISSION and United States of America, Respondents,

Pacific Maritime Association, Intervenor.

No. 74–1934.

United States Court of Appeals, District of Columbia Circuit.

Argued May 17, 1976.

Decided Aug. 25, 1977.

Rehearing Denied Oct. 5, 1977.

---

Cecelia H. Goetz, New York City, with whom Herbert Rubin and Alan A. D'Ambrosio, New York City, were on the brief for petitioner.

Robert J. Wiggers, Atty., Dept. of Justice, Washington, D. C., was on the brief for respondent United States. Howard E. Shapiro, Atty., Dept. of Justice, Washington, D. C., also entered an appearance for respondent United States.

Gordon M. Shaw, Atty., Federal Maritime Commission, Washington, D. C., with whom Edward G. Gruis, Deputy Gen. Counsel, Federal Maritime Commission, Washington, D. C., was on the brief for respondent Federal Maritime Commission.

Edward D. Ransom, San Francisco, Cal., with whom R. Frederic Fisher, San Francisco, Cal., was on the brief for intervenor Pacific Maritime Association.

Before BAZELON, Chief Judge, and McGOWAN and ROBB, Circuit Judges.

Opinion for the Court filed by Circuit Judge ROBB.

ROBB, Circuit Judge:

The petitioner Wolfsburger Transport-Gesellschaft (WOBTRANS) challenges an order of the Federal Maritime Commission approving an Agreement adopted by the Pacific Maritime Association (PMA). The Agreement provides for an assessment on cargo entering or leaving ports on the Pacific Coast. In particular, WOBTRANS objects to the assessment on automobiles and its impact on the handling of Volkswagen automobiles. The present case is a continuation of the litigation begun in *Volkswagenwerk Aktiengesellschaft v. FMC*, 390 U.S. 261, 88 S.Ct. 929, 19 L.Ed.2d 1090 (1968) (Volkswagen).

PMA, the intervenor here, is a corporation composed principally of stevedore companies and steamship lines and their agents doing business on the west coast of the United States. Its principal function is to represent its members in negotiations with various maritime unions, among them the International Longshoremens and Warehousemens Union (ILWU) and to establish policy for its members in matters involving labor and labor controversy. WOBTRANS is a corporation organized and existing under the laws of the Federal Republic of Germany with its principal place of business in Wolfsburg, Germany. It operates vessels engaged in the transportation of vehicles from Germany to the Pacific coast ports, among other places. The cargo is largely if not exclusively Volkswagen automobiles. Although WOBTRANS is not a member of PMA the stevedores handling the WOB-

TRANS cargo are members and accordingly are assessed by PMA on the automobiles handled by them.

The purpose of the PMA Agreement is to compensate west coast longshoremen for loss of employment caused by the introduction of mechanical labor-saving devices and the elimination of certain restrictive work practices. To this end the Agreement provides a Pay Guarantee Plan to be funded by assessments on cargo loaded and unloaded at west coast ports. Under the Agreement the amount or rate of the assessment varies, according to the benefit from the Agreement thought to be obtained by carriers in handling various types of cargo. Thus, the tax imposed on automobiles is one and one-half times the assessment on breakbulk cargo, the theory being that carriers of automobiles have greatly benefited from a technique known as Roll-on/Roll-off (Ro/Ro).

Pursuant to section 15 of the Shipping Act, 46 U.S.C. § 814, the Commission approved the Agreement. The petitioner contends, however, that the Agreement violates sections 16 and 17 of the Act, 46 U.S.C. §§ 815, 816, because the assessment on automobiles is unreasonably high and discriminatory with relation to the assessment on other categories of cargo. WOB-TRANS says there is no evidence that other favored cargo benefits less, or that the assessment on automobiles is the fairest that could be devised.

The Department of Justice, representing the United States as a statutory respondent, has filed a brief contending that on the basis of the Commission's decision it is impossible to determine whether the Commission's conclusion is reasonable and supported by substantial evidence. Accordingly the Department urges that the case be remanded to the Commission for additional findings.

■ The law of this case has been fully explicated by the Supreme Court in the *Volkswagen* case, *supra*, and by this court in *Transamerican Trailer Transport, Inc. v.*

*FMC*, 160 U.S.App.D.C. 351, 492 F.2d 617 (1974). Briefly, the question is whether the Agreement imposing the assessment on automobiles is the fairest that could be devised, and whether the charge levied is reasonably related to the benefits received by the automobile shippers. That substantial benefits have been received is not enough; there must be substantial evidence that the charges "are as appropriately proportioned as would be feasible".[1] Accordingly, the disposition of this case depends upon the answer to a simple question: Is there substantial evidence in the record which supports the disparity between the rate of assessment on automobiles and the rate applied to other cargo? We think the answer must be in the negative.

The Commission reasoned:

. . . the comparison most relevant in determining the reasonableness of the assessment on automobiles is its relationship to the assessment on breakbulk cargo, which pays the lowest per hour cost, has benefited least from mechanization (since it does not utilize Ro/Ro carriage, containerization, or other specialized mechanized handling methods), and thus is least responsible for manhour loss due to mechanization.

(J.A. 182a)

We have searched the record for evidence supporting the Commission's statement that "breakbulk cargo . . . has benefited least from mechanization". Our conclusion is that there is no substantial evidence for the proposition that breakbulk cargo has benefited least. There is evidence that breakbulk cargo has indeed received benefits. Thus the record indicates that all categories of cargo have experienced a decrease in manhours used per ton loaded or discharged by reason of elimination of restrictive work practices and the introduction of new cargo handling equipment or methods. (J.A. 545a) Specifically, there are indications that breakbulk carriers have benefited from the elimination of restrictive work practices and the availability of mechanization. Because of ship design or restrictions in cer-

---

1. *Volkswagen, supra*, 390 U.S. at 294, 88 S.Ct. at 947 (Harlan, J., concurring).

tain foreign ports some breakbulk carriers have not used containers, but others have, and thus have enjoyed the benefits available to lift-on/lift-off automobile carriers. (J.A. 502, 505) Except for such inklings the record is silent as to the extent of the benefits accruing to breakbulk cargo; certainly the record is not adequate to determine the degree of those benefits. In these circumstances we cannot say that the Commission reasonably concluded that "the record in this proceeding supports an effective assessment on automobiles of approximately half again that placed on breakbulk cargo." (J.A. 182a) If it is not known how much breakbulk cargo benefited it is impossible to say that automobiles benefited one and one-half times as much.

■ Assuming the critical premise that breakbulk cargo has benefited least the Commission has focused on the substantial benefits accruing to automobiles. As the Supreme Court has told us however the question is not whether automobiles have substantially benefited but whether the charges imposed for those benefits are fair and appropriately proportioned in relation to the benefits received and burdens imposed on other cargoes. From the Commission's opinion and the record as a whole we are unable to discern a reasonable basis for the Commission's conclusion with respect to automobiles. Accordingly the case is remanded to the Commission for further proceedings to develop a reasonable and understandable comparison between the benefits accruing to breakbulk cargo and those realized by automobiles.

*So Ordered.*